LOUIS. The (CROSSLEY v.). See Case No. 3,436.

## Case No. 8,529.

### The LOUISA.

#### [3 Ware. 130.] [1]

District Court, D. Maine. March, 1857.

COLLISION —STEAMER AND SAIL VESSEL—PRIMA FACIE FAULT—RULE OF PASSING.

1. When a steamer and sailing vessel are approaching each other in such a direction that there is danger of a collision, the sailing vessel has the right of way, and should hold on her course. whether she has the wind free or is close hauled.

2. It is the duty of the steamer to take the necessary precaution to keep out of her way. If she does not, and a collision happens she will prima facie be deemed in fault.

3. When two vessels are approaching each other so that there is danger of their meeting. the general rule is that each vessel is to keep to the right.

4. This in all ordinary cases is the rule whether both are sailing vessels or both steamers. or one is a steamer and the other moved by the wind.

In admiralty.

Mr. Butler, for libellant.

Mr. Rand, for respondent.

WARE, District Judge. The Forest City steamer, in the regular trade between Portland and Boston, in the evening of the 16th of February left the wharf at Portland on a trip to Boston, and about half-past twelve the next morning, when about 10 miles south of the Isle of Shoals, she came in collision with the brig Louisa. on her passage from Boston to Portland. She sustained some injury by the collision, and this trial is brought to charge the brig in the damage. The steamer was on a course S.S.W., with the wind dead ahead, and the Louisa on a course N.N.E., directly before the wind. Both were in the track usually taken by vessels between these ports when the wind is favorable. There is some difference in the testimony as to the state of the weather at the time of the collision. The first part of the night, it is agreed. was foggy and dark. But according to the testimony from the steamer, some time before 12 o'clock the fog cleared away so that the stars were seen, and continued so until after the collision. The pilot says that with his night glass he saw the brig two miles ahead. and kept her in view till the time of the collision; that shortly before he passed a steamer from Boston for Portland, and saw her lights at the distance of four or five miles; and that at the time of the collision a steamer's lights might be seen six or seven miles. On the other hand, the mate of the brig, who was at the helm, says that at the time the fog was dense and the stars hid. and that he did not see the steamer's lights until she was within three-quarters of a mile. On the whole evidence, my opinion is that if there

¹ [Reported by George F. Emery, Esq.]

had been a proper look-out on board the brig, such as there ought to be in so great a thoroughfare for vessels, the steamer's lights would have been sooner seen.

There are some principles of law applicable to cases like the present, so well established that they ought to be generally known, and for the safety of navigation observed. It is a general rule when a steamer and a sailing vessel are approaching each other, so that there is danger of a collision, that the sailing vessel has the right of way, and she is bound to hold on her course, and it is the duty of the steamer to take the necessary precautions to avoid a meeting. If this is not done, prima facie she will be deemed in fault. It has been so repeatedly decided by the supreme court. St. John v. Paine, 10 How. [51 U. S.] 557; The Oregon v. Rocca, 18 How. [59 U. S.] 570; Crockett v. Newton, Id. 581.

Another general rule is that where both vessels are approaching in directly opposite directions, with the wind fair, and there is no danger of a collision, each vessel is to pass to the right, and this rule is applied in all ordinary cases, whether both are sailing vessels or both steamers, or one moved by the wind and the other by steam. There are peculiar cases that form exceptions to all general rules. But in all ordinary cases it is of great importance to the security of navigation that these general rules should be observed. Then each party, knowing what he is bound to do, and what he has a right to expect of the other, there is no danger of their acting at cross purposes, but both concurring in the same mode of guarding against danger, a collision is avoided with ease and certainty. But as it must sometimes happen that the danger may be avoided with equal ease and certainty by either one of two manoeuvers, if there be no general rule governing the discretion of the pilot. there being no opportunity for consultation, they are just as likely, without any impeachment of their judgment, to choose opposite manoeuvers, which will be sure to produce a collision, as they are to concur in the same, and thus avoid it. And hence the importance of known rules of navigation. Thus, when two steamers are approaching each other directly ahead, by a regulation of the Trinity masters, each is required to put her helm a-port and pass to the right, though it might be just as easy, perhaps, to pass to the left as to the right. The Shannon, 1 W. Rob. Adm. 463. The high court of admiralty adhere with inflexible rigor to these general rules, and it was said by the Trinity master that if they had always been observed in practice. it would have prevented a great number of accidents that have occurred. Our supreme court seem disposed to uphold them with equal constancy. St. John v. Paine, 10 How. [51 U. S.] 581, 583. If, as is justly observed by Mr. Justice McLean. in the case of The Oregon v. Rocca, 18 How. [59 U. S.] 572. where this rule of passing to the right was drawn in question, the courts

allow exceptions, unless in extreme cases, the mind of the helmsman immediately becomes doubtful and hesitating, and more danger will result to navigation by leaving the matter to the judgment of the pilots, than by enforcing the general rule in all cases where it is practicable.

Let us apply these well-known established rules of navigation to the present case. The vessels were approaching each other in precisely opposite directions. The brig was sailing in a course N.N.E. immediately before the wind; the steamer was on a course S.S.W., with the wind dead ahead, but a steamer being moved by paddles, and not by the wind, is always considered as sailing with a fair wind. The pilot of the steamer says that when he first saw the brig she was 2½ points over the steamer's larboard bow. If so, and both vessels had continued their course, one would have passed to the larboard of the other, that is to the right. But the pilot changed the course of the steamer two points to the right, which would give the brig more room. This was just what the rules of navigation required of him if there was a possibility of a collision. The mate of the brig says that he first saw the steamer's light directly ahead at the distance of about three-fourths of a mile, and immediately changed his course two points to left. But the rules of navigation required him, if he knew it to be a steamer's light, to hold on his course, and as the steamer carried four lights, he could hardly with common attention have mistaken it for the light of a sailing vessel. If he mistook it for the light of a sailing vessel, then he should have put his helm a-port and passed to the right.

It appears to me that in any view that can be taken of the case, the brig was in fault. Decree that the brig is liable for damage.